# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BARBARA J. REED,

    *Plaintiff*,

v.                                          CASE NO. 12-CV-15579

COMMISSIONER OF                             DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,                            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.   REPORT

#### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, and Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 16.)

Plaintiff Barbara J. Reed was 52 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 39.) Plaintiff's work history includes employment as a care giver for one year, a hair stylist for two years, and a school bus driver for 14 years. (Tr. at 136.) Plaintiff filed the instant claim on August 6, 2010, alleging that she became unable to work on July 1, 2002. (Tr. at 106-10.) The claim was denied at the initial administrative stage. (Tr. at 58.) In denying Plaintiff's claims, the Commissioner considered osteoarthritis and allied disorders as possible bases for disability. (*Id.*) On August 19, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") B. Lloyd Blair, who considered the application for benefits *de novo*. (Tr. at 16-57.) In a decision dated September 6, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 29.) Plaintiff requested a review of this decision on September 30, 2011. (Tr. at 15.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 8, 2012, when, after review of additional exhibits[2] (Tr. at 569-74), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On December 20, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.** **Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

5

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2007, and that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of July 1, 2002, through her date last insured of September 30, 2007. (Tr. at 21.) At step two, the ALJ found that Plaintiff's depression, anxiety, hypertension, thyroid (nodular goiter), right carpal tunnel syndrome, right shoulder rotator cuff tear, and low back pain were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 22-23.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 27-28.) The ALJ also found that as of the date last insured, Plaintiff was 49 years old, which placed her in the "younger individual age 18 - 49" category. *See* 20 C.F.R. §§ 404.1563, 416.963. At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 23-27.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 28-29.)

**E.     Administrative Record**

**1.     Evidence Prior to September 20, 2007, the Date Last Insured**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff underwent counseling at the Pioneer Counseling Center from 1995 through July 1999 for depression. (Tr. at 532-66.) In January 1995, Plaintiff reported that she "was shot at while driving [her] school bus," that she was "denied worker's comp," that she is "unable to see a bus," and that she did not want to go "no where near" buses. (Tr. at 557-58.)

Plaintiff underwent various testing and treatment at Beaumont Hospital from October 1996 through September 2003. (Tr. at 394-453.) Plaintiff also was treated by Myron LaBan, M.D., for

right elbow pain and right carpal tunnel syndrome from September 2001 through September 2010. (Tr. at 219-365.) In October 2001, Plaintiff complained of neck and shoulder pain and Dr. LaBan noted that "on x-rays done over a year ago, we found some low-grade degenerative changes of the neck." (Tr. at 227.) On August 21, 2003, x-rays of Plaintiff's right elbow were normal. (Tr. at 234.)

Plaintiff was treated for depression with Chlakudy Ramakrishna, M.D., from June 2004 through February 2008. (Tr. at 518-31.) On January 12, 2005, Dr. Ramakrishna noted that Plaintiff was "having a lot of stress and problem[s], . . . [s]till feel[s] isolative, withdrawn, [with] feeling[s] of hopelessness and helplessness." (Tr. at 522.) Dr. Ramakrishna found that Plaintiff had fair personal hygiene, had good eye contact, was cooperative, had no hallucinations or delusions and was alert and oriented. (*Id.*) He assessed a GAF score of 70. (*Id.*)

On March 29, 2006, Dr. LaBan gave Plaintiff a prescription for a carpal tunnel splint. (Tr. at 219.)

Joseph Salama completed a Medical Report on April 30, 2007. (Tr. at 454-56.) Dr. Salama noted that Plaintiff had fallen while "working in her yard on a flower bed" when she attempted to move the raised bed and it "struck her left shoulder." (Tr. at 455.) Dr. Salama diagnosed acute "calcific tendonitis of the left rotator cuff" and injected her shoulder with Xylocaine and Depo-Medrol. (Tr. at 456.)

### 2. Evidence after September 20, 2007

In December 2007, Plaintiff was in a motor vehicle accident and sustained a head injury that was diagnosed as a traumatic brain injury. (Tr. at 282-83.)

In 2008, Plaintiff was treated at Associated Endocrinologists by Dr. Charles Taylor for benign thyroid issues (goiter with bilateral nodules). (Tr. at 184-90, 319-23.)

On February 20, 2008, Dr. Ramakrishna noted that Plaintiff "was treated with medications [for depression], did well, and stopped taking medications three years ago." (Tr. at 519.)

An MRI of Plaintiff's right shoulder taken on June 18, 2008, showed "mild glenohumeral and acromioclavicular osteoarthritis" and "[m]ild subacromial-subdeltoid bursitis." (Tr. at 289-90.) On July 14, 2008, x-rays of Plaintiff's right shoulder were "essentially within normal limits." (Tr. at 325-26.) Dr. Kyle Anderson also noted that same day that Plaintiff had "full motion" in her cervical spine. (Tr. at 325.) An MRI of Plaintiff's cervical spine taken on August 22, 2008, showed "[m]ild degenerative disc disease at C3-C4 and C6-C7." (Tr. at 287-88.)

Plaintiff was treated by Wendy Griffin, M.D., from September 2008 to June 2010 for a skin rash, cold and sinus problems, and hypertension. (Tr. at 191-210.)

On November 16, 2008, an MRI of Plaintiff's right knee showed "[s]ubtle fraying of the inner margin of the body of the lateral meniscus." (Tr. at 285.)

On September 2, 2009, Dr. LaBan discussed with Plaintiff "the fact that she is morbidly obese and that anything that we did with respect to her knees, whether it be surgery, injections, or therapy is time consuming and will not be effective in light of her being overweight." (Tr. at 255.) At that time, Plaintiff, who is five feet three inches tall, reported weighing 345 pounds. (*Id.*)

In March and April of 2009, Plaintiff was studied for traumatic brain injury and received a communicative diagnosis of "[m]ild [to] [m]oderate receptive and mild expressive dysphasia complicated by higher level language deficits." (Tr. at 237, 260, 278-81, 296-305, 311-18.) A neuropsychological evaluation performed by Diane Karle, Ph.D., in March 2009 concluded that Plaintiff's traumatic brain injury from the December 2007 car accident caused "only very subtle or circumscribed deficits . . . ." (Tr. at 310.) In addition, Dr. Karle diagnosed major depression and "somatization disorder with prominent hypochondriacal features" and recommended that Plaintiff

9

"[c]onsider mental health treatment," but warned that "therapists should be aware of her emotional status so that they do not inadvertently reinforce her mental disorder symptoms, especially the somatization disorder. Rehabilitation therapeutic activities should be time-limited and focus on 'real-life' accomplishments." (*Id.*)

On March 31, 2009, Dr. LaBan noted that "[x]-rays of the lumbar spine look essentially normal" with "minimal degenerative changes at L5-S1 . . . ." (Tr. at 277.) Plaintiff was also treated by Cassius DeFlon, M.D., from June 2009 to October 2010. (Tr. at 374-77.)

On July 31, 2009, an MRI of Plaintiff's lumbar spine showed "[m]ild multilevel degenerative changes of the lumbar spine, most severe at L4-L5." (Tr. at 275-76.)

In 2010, Plaintiff was treated by Michael Pochron, M.D., for right carpal tunnel syndrome and status post ligament injury of the right thumb. (Tr. at 211-18.) Plaintiff underwent hand therapy and cortisone injections for a rotator cuff injury in July and August of 2010. (Tr. at 240-46.) Plaintiff also participated in physical therapy for her hand and shoulder injury in August 2010. (Tr. at 327-63.)

Plaintiff was treated by Varsha Karamchandani, M.D., from 2010 to 2011, who completed a Medical Impairment Questionnaire Report on January 9, 2011. (Tr. at 379-84.) As to mental aptitudes needed to do unskilled work, Dr. Karanchandani concluded that Plaintiff was not unable to meet competitive standards in any category of skill except travel in an unfamiliar places and use of public transportation. (Tr. at 381-82.) Dr. Karamchandani also indicated that Plaintiff does not have a low IQ or reduced intellectual functioning. (Tr. at 382.) Nonetheless, Dr. Karamchandani found Plaintiff was mildly restricted in activities of daily living, moderately limited in maintaining social functioning, and moderately to markedly limited in maintaining concentration, persistence or pace. (Tr. at 383.) Dr. Karamchandani noted that Plaintiff did not have a documented history of

10

any affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activity or any anxiety-related disorder that causes an inability to function independently outside one's home. (*Id.*) Nevertheless, Dr. Karamchandani concluded that Plaintiff's impairments or treatment would cause her to be absent from work more than four days a month despite noting that Plaintiff had been in treatment only for the "past 4 months." (Tr. at 384.) Dr. Karamchandani's sole explanation for his conclusion was that Plaintiff "has difficulty functioning secondary to physical limitations." (*Id.*)

Plaintiff was treated for depression from January through August of 2011 with Chalakudy Ramakrishna, M.D. (Tr. at 508-17, 567-68.) On January 19, 2011, Dr. Ramakrishna diagnosed major depression and assessed a GAF score of 55. (Tr. at 511.) On February 15, 2011, Dr. Ramakrishna assessed a GAF score of 65 and noted only that Plaintiff "continues to remain depressed, isolating, unable to focus, feeling overwhelmed, difficultly making decisions, tired. Patient has severe psychomotor retardation. Difficulty making decision." (Tr. at 513.) Dr. Ramakrishna did not make any underlying findings regarding orientation, stream of thought, thought content, etc. (Tr. at 510-11.) Dr. Ramakrishna completed a Medical Report on March 16, 2011. (Tr. at 386-93.) Dr. Ramakrishna found that Plaintiff was unable to meet competitive standards in almost all aptitudes and skills needed to do unskilled work and found that Plaintiff was markedly limited in all functional categories, including having had three episodes of decompensation. (Tr. at 389-91.) Dr. Ramakrishna offered no explanations for his findings.

At the administrative hearing, Plaintiff testified that she was diagnosed with hypertension in 1996 and that the condition is controlled with medication. (Tr. at 41-42.) Plaintiff also testified that she was diagnosed with a thyroid problem in 2008 and that she takes medication for that. (Tr. at 42.) Plaintiff stated that she was diagnosed with carpal tunnel syndrome in 1995 and had surgery

11

done on her right hand in March of 2012, but that it is "difficult" for her to do buttons, she can tie her shoes, but she cannot pick up coins from a table. (Tr. at 42-43.) Plaintiff stated that her right shoulder problem was diagnosed in 2007. (Tr. at 43.) Plaintiff indicated that she started having problems with her lower back in 2008 after her car accident and that no one has suggested surgery. (Tr. at 43-44.) Plaintiff began treating with her psychiatrist, Dr. Ramakrishna, in 1992 or 1993; she sees him once a month and is treated with prescription medication, i.e., Zoloft. (Tr. at 44-45.) Plaintiff added that she was in the hospital for depression in February 2012. (Tr. at 45.)

Plaintiff testified that she lives with her husband and adult son, that she does not cook, she does not do laundry, she does not grocery shop, she does not have any hobbies, she does not visit with friends or go to church, she does not belong to any clubs, and that, on a typical day, she "[w]alk[s] from one room to another. Or just some times I just stay in bed . . . . I might get up and sit in my favorite chair in the living room and look out the window. Then I go back, lay back down." (Tr. at 46-47.) Plaintiff further testified that she can lift only five pounds, can sit for "like maybe thirty minutes[,]" can stand "[m]aybe about fifteen to twenty minutes and I be wanting to sit down[,]" can walk "[m]aybe a half a block[,]" and can climb stairs but "[i]t would be difficult." (Tr. at 47-48.) Plaintiff also stated that she cannot bend over to pick a dollar bill off the floor, and cannot squat. (Tr. at 48.)

When asked by counsel, Plaintiff indicated that she has "maybe five days" that are bad each month and that on those days she stays in bed "[p]ractically all day, really." (Tr. at 49.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> could meet the demands of light work, who should never use ladders, scaffolds or ropes. No use of torque, pneumatic or power tools. Only occasional reach of overhead with the right upper extremity. No commercial driving. Occasional push or pull with the right upper extremity. The individual could perform simple unskilled

12

> work with an SVP of 1 or 2, work involving just one, two, or three step instructions. No job involving concentration, detailed opposition tasks, multi-tasking, computer calculating or problem solving.

(Tr. at 53-54.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 4,200 dishwasher jobs and 4,300 packer jobs in the region. (Tr. at 54.) The ALJ then asked the VE to add the limitations that the person "should only have work that requires brief or superficial contact with the general public and jobs without production quotas, mandating a specific number of pieces or having a down line or up line co-worker, dependent upon the claimant's productivity." (*Id.*) The VE responded that such a person could perform the 2,600 office clerk and 2,000 packer jobs in the region. (Tr. at 55.) In response to the ALJ's question, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 55-56.)

    **F.    Analysis and Conclusions**

    **1.    Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 23-27.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.   Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ did not properly evaluate the opinions of Dr. Ramakrishna (Doc. 9 at 10-16), and that the ALJ failed to properly evaluate Plaintiff's credibility. (*Id.* at 17-19.)

As to the timing of the most relevant evidence, in order to be eligible for disability insurance benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i)(2)(c); 423(a), (c-d). "If a clamant is no longer insured for disability insurance benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002). Therefore, the ALJ generally only considers evidence from the alleged disability onset date through the date last insured. *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004). In order for evidence of the plaintiff's condition after the date

last insured to be relevant to the disability decision, the evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). If the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the

15

alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)   [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)  Any measures . . . used to relieve . . . pain.

16

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 23-27.) I suggest that the ALJ's findings are supported by substantial evidence. During the relevant time period, i.e., before September 30, 2007, there is very little evidence at all, let alone any evidence of any disabling physical or mental impairment. Plaintiff's's need for counseling appeared to be directly related to an incident that occurred while she was working. (Tr. at 532-66.) Plaintiff's physical impairments were mild, i.e., right elbow pain and right carpal tunnel syndrome. (Tr. at 219-365.) Any objective evidence was normal (right elbow) or showed only mild issues (cervical spine). (Tr. at 227, 234.) As to mental impairments, although Plaintiff was treated for depression with Dr. Ramakrishna, Plaintiff consistently had fair personal hygiene, good eye contact, was cooperative, had no hallucinations or delusions, was alert and oriented, and was assessed a GAF score of 70. (*Id.*) In addition, Dr. Karle noted that Plaintiff had "prominent hypochondriacal features[.]" (Tr. at 310.) Finally, Plaintiff was treated with prescription medications only, and such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's conclusions.

Even assuming, *arguendo*, that Plaintiff could be considered disabled after the motor vehicle accident that took place in December 2007, this evidence would not support a finding of disability as of the date last insured since it does not relate back to her condition before the expiration of insured status. *See Strong, supra*.

I further suggest that these findings are not undermined by Plaintiff's argument that the ALJ did not give deference to the medical source opinion by Dr. Ramakrishna. The ALJ did not owe Dr. Ramakrishna's statement any deference because the statement discussed Plaintiff's condition almost four years after the date last insured, i.e., March of 2011. (Tr. at 386-93.) *See Meredith v. Bowen*, 833 F.2d 650, 655 (7th Cir. 1987); *Burke v. Colvin*, No.11 C 50001, 2013 WL 5288155, at *11 (N.D. Ill. Sept. 17, 2013). The same is true for Dr. Karamchandani's opinion of January 9, 2011. (Tr. at 379-84.)[3]

I further suggest that even if the opinion should have been considered, the result would be the same. Both of the opinions were conclusory check-box forms which contained no citations to results of tests, observations, or other medical findings. Under these circumstances, I suggest that the ALJ was free to discount the conclusions and committed no error in doing so. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (holding that ALJ properly discounted doctor's opinions on a check-off form which "did not cite clinical test results, observations, or other objective findings as a basis for determining [the plaintiff's] capabilities"); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of checklist forms which cited no medical evidence and provided little or no elaboration).

I therefore suggest that the ALJ's findings that Plaintiff was not fully credible and is not disabled are supported by substantial evidence and should not be disturbed.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within

---

[3] I note that neither opinion indicated that it was a "retrospective" medical opinion regarding Plaintiff's status before the date last insured. *See, Feismuth v. Astrue*, 920 F. Supp. 2d 943, 951 (E.D. Wis. 2013).

which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ **Charles E. Binder**
                                                CHARLES E. BINDER
Dated: November 12, 2013                        United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  November 12, 2013                        By     s/Jean L. Broucek
                                                           Case Manager to Magistrate Judge Binder